UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
AMARILIS COSME RODRIGUEZ, on        :
behalf of JACC,
                                    :

        Plaintiff,                  :
                                    :
    -against-                       :
                                    :
CAROLYN W. COLVIN, Acting           :
Commissioner of Social Security,
                                    :

        Defendant.                  :
-----------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE



**REPORT AND RECOMMENDATION**

13-CV-6957 (LGS) (KNF)

TO THE HONORABLE LORNA G. SCHOFIELD, UNITED STATES DISTRICT JUDGE

On September 30, 2013, Amarilis Cosme Rodriguez ("Rodriguez") commenced this

action pro se on behalf of her minor child, who is identified in the complaint as "JACC," against

the Commissioner of Social Security ("Commissioner") seeking review of an administrative law

judge's ("ALJ") decision finding JACC ineligible for Supplemental Security Income ("SSI")

benefits, pursuant to 42 U.S.C. §§ 405(g) and 1382c(a)(3)(c).  The complaint was accompanied

by the August 1, 2013 Notice of Appeals Council Action denying review of the ALJ's February

17, 2012 decision.  On October 29, 2013, Rodriguez filed an amended complaint accompanied

by exhibits postdating the ALJ's February 17, 2012 decision.  Before the Court is the

Commissioner's motion for judgment on the pleadings made pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.  Rodriguez opposes the motion.

## BACKGROUND

*Procedural History*

Rodriguez filed an application for SSI benefits on behalf of her son, JACC, on January

1

18, 2010, alleging that he has been disabled since his birth on June 17, 2003.  The claim was

denied on July 2, 2010, and Rodriguez requested a hearing before an ALJ.  On July 28, 2011,

Rodriguez and JACC appeared pro se at a hearing before ALJ Selwyn S. Walters.  Rodriguez

testified that JACC was hyperactive, did not listen, did not comprehend what he was told, was

aggressive with other children and was afraid of elevators and stairs.  Rodriguez stated that

JACC had behaved in these ways since he was approximately six years old and that he was being

treated by a psychiatrist.  Rodriguez also testified that JACC could undress himself, wash his

hands and face, brush his teeth, use a spoon but not a fork and did not answer the telephone.

A medical expert, Dr. Shanashaka, also appeared at the hearing.  According to the

medical expert, there was insufficient evidence presented to form an opinion regarding the

nature and severity of JACC's impairment; the only documentary evidence presented on that

date was a prescription for Strattera; no report from a psychiatrist had been provided.  As a

result, the ALJ adjourned the hearing and advised that he would issue a subpoena for additional

medical records to JACC's psychiatrist, Dr. Gerardo Posada ("Dr. Posada"), of the Urban Health

Plan, Inc.  A subpoena was sent to Dr. Posada on August 1, 2011.

The hearing was continued on November 3, 2011.  As of that date, Dr. Posada had not

responded to the ALJ's subpoena. The plaintiff testified concerning her son's condition, stating

that he was in the third grade and that his teacher said he was at risk for being held back.  Dr.

Robert M. Berk ("Dr. Berk"), a pediatrician, testified as a medical expert on November 3, 2011.

Dr. Berk found that there was insufficient evidence regarding JACC's impairment(s) because all

that had been provided were two prescriptions, one for Strattera and one for Concerta.[1]

---

[1]In his decision dated February 17, 2012, the ALJ noted that additional evidence was

(continued...)

At the conclusion of the hearing, the ALJ advised the plaintiff that he would issue another subpoena for medical records as well as a subpoena for school records from the New York City Department of Education.

On February 17, 2012, the ALJ found that JACC had not been disabled since January 18, 2010, the date the application for SSI benefits was filed.  Rodriguez requested review of the ALJ's decision by the Social Security Administration's Appeals Council and submitted new evidence to that body.  On August 1, 2013, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Rodriguez filed a complaint with this court, on behalf of her son, on September 30, 2013, seeking review of the ALJ's decision and alleging that JACC is entitled to receive SSI benefits because of his "deficient att[ent]ion" and his "right eye condition."  Thereafter, on October 29, 2013, the plaintiff filed an amended complaint in which she expanded her statement of JACC's disability, stating, inter alia, that he used medication, had attention deficit, did not sleep well, was hyperactive, did not listen and did not eat much.  As noted above, the plaintiff's amended complaint was accompanied by exhibits postdating the ALJ's February 17, 2012 decision.

*The ALJ's Decision*

The issue addressed by the ALJ was whether JACC is disabled under the Social Security Act ("SSA").  The ALJ found that JACC: (1) was born on June 17, 2003, and therefore was a school-age child from January 18, 2010, the date the application for SSI benefits was filed, until the date of the decision; (2) has not engaged in substantial gainful activity since January 18, 2010; (3) has the following severe impairments: attention deficit disorder with hyperactivity

---

[1](...continued)
submitted after the hearing in response to his subpoena and was included in the record.

("ADHD"), adjustment disorder and an anxiety disorder; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Listings"); (5) does not have an impairment or combination of impairments that functionally equals the severity of one of the impairments listed in the Listings; and (6) has not been disabled, as defined in the SSA, since January 18, 2010, the date the application for SSI benefits was filed.

In discussing JACC's impairments, the ALJ found that his ADHD, adjustment disorder and anxiety disorder were severe because they cause, inter alia, impulsiveness, inattention and hyperactivity. The ALJ noted further that, although JACC was diagnosed with strabismus-esotropia, this was not a severe impairment because, on examination by Dr. Thomas DePaola ("Dr. DePaola"), a pediatrician, his corrected vision was 20/25 and was found to be grossly normal for his age.[2]

In determining whether JACC's severe impairments meet or medically equal the severity of one of the impairments in the Listings, the ALJ found that, although JACC was diagnosed with ADHD and takes Strattera for the condition, his ADHD does not meet the criteria for this condition found at section 112.11 of the Listings, "Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity." See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 112.11. Specifically, there was "no indication in the treatment records or the consultative reports that [JACC's] impulsiveness, inattention and hyperactivity are markedly so. . . . To the contrary, Dr. [Edward] Hoffman, the

---

[2]Strabismus is a misalignment of the eyes so that they point in different directions; also known as "crossed eyes." Esotropia is a form of strabismus in which one eye turns inward. American Medical Association Complete Medical Encyclopedia 1168 (Jerrold B. Leikin, M.D. & Martin S. Lipsky, M.D., eds., 2003).

consultative psychiatric examiner, reported adequate attention, concentration, and intact memory skills and opined that [JACC] could follow age appropriate instructions and directions."

In order to determine whether JACC has an impairment or combination of impairments that functionally equals a condition described in the Listings, the ALJ analyzed JACC's symptoms across the six domains set forth in 20 C.F.R. § 416.926a(b)(1):  (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being.  In particular, the ALJ considered whether JACC had a marked limitation in two of the domains or an extreme limitation in one domain.  The ALJ noted that he had considered all of the relevant evidence in the case record, including objective medical evidence and other relevant evidence from medical sources, information from other sources such as school teachers, family members, and friends, and statements from JACC, his parents and other caregivers.

The ALJ also noted that, as provided in 20 C.F.R. § 416.926a(b) and (c), he evaluated the "whole child" in making findings regarding functional equivalence, specifically how JACC functions as compared to other children the same age who do not have impairments and, inter alia, the type, extent, and frequency of help JACC needs to function.  The ALJ also noted that he employed a two-step process in considering JACC's symptoms.  First, he determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce JACC's pain or other symptoms.  Secondly, once an underlying physical or mental impairment that could reasonably be expected to produce JACC's pain or other symptoms had been shown, the ALJ evaluated the intensity, persistence and limiting effects of those symptoms and the extent to which they limited JACC's functioning. For this purpose, when statements about the intensity of pain or other symptoms were not

substantiated by objective medical evidence, the ALJ made a finding on the credibility of the statements based on a consideration of the entire case record.

   a)   *Acquiring and Using Information*

   Acquiring and using information concerns how well a child is able to acquire or learn information and how well a child uses the information he has learned. The domain involves how well children perceive, think about, remember and use information in all settings.  School-age children between the ages of 6 and 12 should be able to learn to read, write, and do math and discuss history and science.  Some examples of difficulties children have in acquiring and using information are: not understanding words about space, size, or time, not being able to rhyme words or the sounds in words, and having difficulty recalling important things learned in school the day before.

   The ALJ determined that JACC has a less than marked limitation in acquiring and using information.  The ALJ found that, although there was some indication in the record that JACC has attention deficits, the evidence showed that these limitations are less than marked in severity. The ALJ noted that JACC was taking regular education classes and that his cognitive functioning was adequate.

   In reviewing JACC's medical history, the ALJ noted that JACC was treated by Dr. Posada at Urban Health Plan, Inc. for ADHD, and that treatment consisted of a prescription for Strattera.  He noted further that on initial psychiatric evaluation in March 2010, JACC was referred for anxiety and hyperactivity, impulsive behavior with poor self control and limited attention span, temper tantrums and poor academic performance.  On examination, JACC had some articular problems and restless legs, mild stuttering and limited impulse control.  He was ultimately diagnosed with ADHD, an adjustment disorder and an anxiety disorder NOS (Not

6

Otherwise Specified).

The ALJ reviewed JACC's subsequent medical history, noting that he was next seen by Dr. Posada on September 24, 2010, and that medication was indicated.  JACC returned to Dr. Posada on October 2, 2010, after undergoing an EKG, which revealed a normal heart rhythm. On that date, Dr. Posada prescribed Concerta.  When JACC was seen on November 17, 2010, he remained anxious, irritable and more jumpy and his school performance was reported still poor; he was distracted, concentrated poorly and was frequently observed daydreaming.  Strattera was prescribed and Concerta discharged.  By December 15, 2010, JACC had a partial positive response but remained impulsive and hyperactive and his dosage was increased.

As part of the application process and at the request of the Commissioner, in June 2010, JACC underwent a consultative psychological evaluation performed by Edward Hoffman, PhD. ("Dr. Hoffman"), who reported that JACC was responsive and cooperative and his manner of relating was adequate.  Dr. Hoffman also reported a constricted range of affect, a somewhat anxious but stable mood, and adequate attention and concentration and intact memory, as well as average cognitive functioning.  Dr. Hoffman also administered the TONI-3 (Test of Nonverbal Intelligence 3rd Edition) on which JACC achieved a quotient of 100, representing an average ability nonverbally.  The ALJ noted that, because Dr. Hoffman's opinion was well supported by the records, he accorded it significant weight.

The ALJ noted that, at the request of the Commissioner, Dr. DePaola conducted a consultative pediatric examination during which Rodriguez reported no developmental delays and stated that JACC was in regular education classes and was doing fairly well with some behavioral issues. Dr. DePaola stated that JACC was capable of all age-appropriate activities of daily living.

The sole dissent was found in a questionnaire completed by JACC's first grade teacher, Ms. Cecilia Barnett ("Barnett"), in March 2010, in which it was indicated that JACC had a very serious problem acquiring and using information.

The ALJ concluded that, given that JACC attends regular education classes and his intellectual functioning is average, a finding of less than marked limitation was appropriate for this domain. He noted that, during his eye examination in February 2010, JACC's parents stated only that JACC seemed sad and that he was very active at home and did not complete tasks but that his developmental milestones were all within normal limits.

b)   *Attending and Completing Tasks*

This domain considers how well a child is able to focus and maintain attention and how well he is able to begin, carry through and finish activities, including the mental pace at which he performs activities and the ease of changing activities. The ALJ noted that JACC's mother stated that her son was unable to sit still, had poor social skills and was very hyperactive and very demanding and that he had difficulty paying attention and sticking with a task.

The ALJ found that, although JACC was taking medication for ADHD, his symptoms did not rise to a marked level of impairment. The ALJ took note of the teacher questionnaire that Barnett completed in March 2010, which indicated that JACC had a very serious problem carrying out multi-step instructions and changing from one activity to another without being disruptive, and had a serious problem working at a reasonable pace, working without distracting others, completing work accurately without careless mistakes, completing homework assignments, waiting to take turns and refocusing when necessary.

The ALJ found, however, that, notwithstanding these observations by JACC's teacher, JACC was able to concentrate sufficiently during his cognitive testing and, according to Dr.

8

Hoffman and Dr. DePaola, was able to concentrate.  The ALJ noted that the state's assessment also reflected less than marked limitations in this domain.  In light of this, the ALJ concluded, a finding of less than marked limitation was in keeping with the evidence.

> c)       *Interacting and Relating with Others*

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community to cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  The ALJ found that JACC has no limitation in interacting and relating with others and that his social functioning by all appearances is normal.  According to Dr. Hoffman, JACC enjoyed playing on the computer and had friends; the treatment notes described him as "friendly and playful."

> d)       *Moving About and Manipulating Objects*

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These activities may require gross motor skills, fine motor skills, or a combination of both.

The ALJ found that JACC had no limitation in moving about and manipulating objects. JACC's mother reported that her son's physical abilities may be limited but according to the ALJ this is not supported by the record.  Barnett, JACC's first grade teacher, indicated that JACC had no difficulty moving about and manipulating objects. Also, JACC's parents indicated that he was very active at home and a physical examination that was performed in August 2011 revealed no positive clinical signs.

> e)       *Caring for Yourself*

This domain considers how well a child maintains a healthy emotional and physical state,

9

including how well a child satisfies his physical and emotional wants and needs in appropriate ways.

The ALJ found that JACC had no limitation in this area. He noted that JACC's mother said that JACC's impairment affected his ability to help himself and cooperate with others in taking care of his personal needs. The ALJ found, however, that despite these allegations, the record failed to show that JACC had any limitations in this domain. The ALJ noted that Dr. Hoffman found, among other things, that JACC could undress himself, answer the telephone, wash his hands and face, brush his teeth and feed himself, and that he showed adequate adaptive functioning. Also, Barnett, JACC's first grade teacher, noted that JACC had only a slight problem in caring for himself.

  f)  *Health and Physical Well-Being*

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's health and functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. This domain addresses how recurrent illness, the side effects of medication and the need for ongoing treatment affect the child's health.

The ALJ noted that JACC underwent a consultative pediatric exam performed by Dr. DePaola. At the time, JACC's mother reported anxiety, hyperactivity and decreased visual acuity in one eye; on examination, no developmental delays were reported and he was in regular education and was doing fairly well.

The ALJ found that JACC had less than marked limitation in this domain. The ALJ noted that JACC was seen by Dr. Jean Mevs ("Dr. Mevs")on August 24, 2011, for a physical examination. JACC was found to be a well child with a healthy weight. The medical evidence

10

also showed that JACC had developed a heart murmur, and confirmed that he had ADHD and was taking Strattera.  The ALJ concluded that "[m]arked restrictions are not warranted as the claimant's conditions – heart murmur, ADHD and diminished vision – do not significantly interfere with the claimant's activities as noted by Dr. De[P]aola."

Based on his analysis, the ALJ found that JACC does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.  Based on these findings, the ALJ determined that JACC was not disabled under the relevant SSA provisions.

*Evidence Submitted to the Appeals Council*

The plaintiff submitted new evidence to the Appeals Council, after the ALJ issued his decision, including the following: (1) treatment notes from Dr. Mevs dated June 11, 2012; (2) treatment notes from Dr. Jay E. Selman dated March 30, 2012, and November 28, 2012; (3) correspondence from Ms. Tracy Horton, JACC's third grade teacher, dated November 12, 2012; (4) education records from the New York City Department of Education for the period March 7, 2013, through March 19, 2013; (5) physical examination records from the New York City Department of Education for the period December 5, 2012, through January 1, 2013; (6) an Individualized Educational Program ("IEP"), dated April 11, 2013; and (7) an IEP dated June 13, 2013.  The Appeals Council stated, in its notice to Rodriguez concerning the action taken on her appeal, that the council looked at the evidence and determined, among other things, that the new information was about a time later than the date of the ALJ's decision, and therefore does not affect the decision about whether JACC was disabled during the period ending on February 17, 2012.

11

*Commissioner's Contentions*

On March 24, 2014, the Commissioner filed a motion for judgment on the pleadings.  In her memorandum of law in support of the motion, the Commissioner offers a review of, <u>inter alia</u>, medical treatment given to JACC, his school evaluations, the plaintiff's and JACC's testimony at the hearing before the ALJ, and new evidence submitted by the plaintiff to the Appeals Council.  The Commissioner contends that the ALJ's determination that JACC is not disabled is supported by substantial evidence and should be affirmed, and that her motion for judgment on the pleadings should be granted.

*Rodriguez's Contentions*

In her affirmation in opposition to the Commissioner's motion for judgment on the pleadings, the plaintiff states the motion should be denied because her son needs help because he "understand[s] nothing," and, although he has had "medication therapy" and special education classes, he does not listen to the teacher.  In addition, according to the plaintiff, her son has trouble sleeping and "want[s] to fight [his] brothers."  Also, among other things, he has had "operations [on] two eyes," is "scare[d] [of] everything," is "not normal" and "need[s] speech therapy."

## DISCUSSION

### *Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.   Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

### Standard for Determining Disability in a Child

"An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a claimant is entitled to SSI benefits on behalf of a child, an ALJ must apply a three-step process as set forth in 20 C.F.R. § 416.924(a).  The Second Circuit, in Encarnacion ex rel. George v. Astrue, described this process as follows:

First, the child must not be engaged in "substantial gainful activity." [20 C.F.R.] § 416.924(a).  Second, the child "must have a medically determinable impairment(s)" that is "severe" in that it causes "more than minimal functional limitations."  Id. § 416.924(c).  Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations.  See id. § 416.924(d) . . . .
For a child's impairment to functionally equal a listed impairment, the impairment must "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  The domains that the regulations establish to determine whether impairments result in marked or extreme limitations are: (1) acquiring and using information; (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  Id. § 416.926a(b)(i).  The [Social Security Administration] must determine

13

whether an impairment or combination of impairments causes a "marked" limitation on a child's functioning in at least two of these domains, or an "extreme" limitation in at least one domain. A "marked" limitation is "'more than moderate' but 'less than extreme'" and "interferes seriously with" a child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). An "extreme" limitation is "'more than marked'" and "interferes very seriously with" a child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3). The regulations recognize that an impairment or combination of impairments may have effects in more than one domain; thus, the [Social Security Administration] evaluates a child's impairments in any domain in which they cause limitations. Id. § 416.926a(c).

568 F.3d 72, 75-76 (2d Cir. 2009).

*Application of Legal Standard*

<u>Additional Evidence</u>

As part of her amended complaint, Rodriguez submitted exhibits post-dating the ALJ's February 17, 2012 decision. Since these exhibits were not considered by the ALJ in rendering his February 17, 2012 decision, or by the Appeals Council in denying review of the ALJ's decision, they are considered additional evidence. The additional evidence consists of school records produced by the New York City Department of Education and medical records concerning JACC's condition during the period after the ALJ's decision. The evidence attached to the amended complaint is not retrospective. Thus, any medical condition experienced by JACC subsequent to the ALJ's decision, which does not pertain to JACC's condition during the period at issue, is not material to his condition during the relevant period. Accordingly, since the additional evidence is not material and no good cause was shown for failing to present it earlier, ordering that additional evidence be taken before the Commissioner is not warranted.

<u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

The ALJ determined properly that JACC never engaged in substantial gainful activity because he is a minor child and never worked. The ALJ's finding that JACC's severe

14

impairments include attention deficit disorder with hyperactivity (ADHD), adjustment disorder and anxiety disorder was supported by the medical records.

The ALJ's finding that JACC's strabismus-esotropia was not severe was also supported by substantial evidence because JACC's vision with glasses was 20/25, on an eye examination, when he was examined by his doctors, and Dr. DePaola stated that JACC's vision was grossly normal for his age.  Hence, there is no evidence that JACC's limitation in this respect reaches the level described in the Listings.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 102.02, 102.03, 102.04.

The ALJ's finding that JACC's ADHD, adjustment disorder and anxiety disorder, while severe, did not meet or medically equal a condition included in the Listings is also supported by substantial evidence.

Specifically, the ALJ found that JACC's ADHD did not meet the criteria set forth in the relevant section of the Listings.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 § 112.11.  A child meets the definition of ADHD under Section 112.11 if he has "developmentally inappropriate degrees of inattention, impulsivity and hyperactivity."  Id.  The ALJ reached this conclusion because he found no indication in the treatment records or the consultative reports that JACC's impulsiveness, inattention and hyperactivity were markedly so.  For example, Dr. Hoffman, the psychiatric consultative examiner, noted in June 2010 that JACC was responsive to questions, his attention and concentration were adequate and he had intact recent and remote memory skills.  Dr. Hoffman also found that JACC functioned with an average range of intelligence, although his arithmetical functioning was below average.

The ALJ's findings concerning six functional equivalence domains are supported by substantial evidence.  He determined properly that JACC did not have two marked limitations or

15

one extreme limitation in functioning in his activities.  The record supports the finding that JACC had less than a marked limitation in acquiring and using information.  Although JACC had some difficulty paying attention, the evidence showed that his limitations in this area were less than marked in severity.  Also, JACC was taking regular education classes and his cognitive functioning was adequate.

Substantial evidence indicates that JACC had less than a marked limitation in attending and completing tasks because he had responded positively to medication and was able to complete tasks and follow age-appropriate instructions with adequate attention and concentration.

The ALJ determined properly that JACC had no limitation in interacting and relating to others because the record shows that his communication, social and emotional skills were age appropriate.  Dr. Posada noted that JACC was "friendly and playful."

Substantial evidence also supports the finding that JACC had no limitations in moving about and manipulating objects, caring for himself, and with respect to health and physical well-being, because no such limitation was suggested by any evidence in the record.

Accordingly, substantial evidence supports the ALJ's determination that JACC was not disabled.

<u>Whether the ALJ's Decision Was Contrary to Law</u>

The ALJ followed the three steps of the sequential analysis required to be performed in determining disability for an SSI-benefits claimant under the age of 18.  At each of the three steps, the ALJ articulated and applied the correct legal standard in making his determinations. The Court perceives no legal error in the ALJ's determinations.  Thus, the ALJ's decision is not contrary to law.

Evidence Submitted to the Appeals Council

Under the regulations, where new and material evidence is submitted to the Appeals Council, the Council will consider the evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b).  The Appeals Council will then review the case "if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Id.

In this case, the evidence submitted to the Appeals Council was outside the relevant period, and thus did not affect the ALJ's decision concerning whether JACC was disabled during the period on or before February 17, 2012.  Therefore, the Appeals Council did not err in refusing to review the ALJ's decision.

## RECOMMENDATION

For the reasons set forth above, I recommend that the defendant's motion for judgment on the pleadings, Docket Entry No. 16, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lorna G. Schofield, 40 Centre Street, Room 201, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Schofield.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and***

***will preclude appellate review.***   See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985);

Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
   February 9, 2015

Respectfully submitted,

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

18